# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| JASON PATRICK KANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:18-cv-1762-LSC |
| | ) | |
| EMPLOYERS MUTUAL | ) | |
| CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

Plaintiff Jason Patrick Kane ("Kane"), who is proceeding *pro se*, brings this action against his automobile insurer, Employers Mutual Casualty Company ("EMCC"), alleging that EMCC acted in bad faith when it refused to pay Kane's claim after his Jeep was allegedly stolen. Presently before the Court is EMCC's motion for summary judgment. (Doc. 16.) For the reasons stated below, EMCC's motion is due to be GRANTED.

## I.    BACKGROUND[1]

---

[1] The facts set out in this opinion are gleaned from Kane's complaint, EMCC's submission of facts claimed to be undisputed, and the Court's own examination of the evidentiary record. The Court notes that Kane did not file a response to EMCC's motion for summary judgment. While Kane's complaint includes allegations concerning EMCC's conduct, bare allegations not supported by materials in the record are insufficient to create a genuine dispute of material fact sufficient to overcome summary judgment. *See* Fed. R. Civ. P. 56(c); *see also* Fed. R. Civ. P. 56(e). Nevertheless, all reasonable doubts about the facts have been resolved in favor of Kane. *See Animal*

On May 10, 2016, Kane called the Alabaster Police Department ("APD") and reported that his 2014 Jeep Wrangler had been stolen from the driveway of 1616 County Road 87, Alabaster, Alabama, a residential property (the "loss location"). Kane's Jeep was insured under Auto Policy Number 79A-56-40---16/06 issued by EMCC (the "Policy"). The Policy provides coverage for a direct and accidental loss to a covered vehicle, including theft. Kane submitted a claim to EMCC for coverage under the Policy.

Shortly after Kane called APD, Officer Todd Reagin ("Reagin") arrived on scene and asked Kane several questions about the Jeep. Kane's answers and Reagin's observations from the scene were reflected in Reagin's Incident Report. According to the Report, Kane parked the Jeep at the loss location on May 4, 2016, without knowing the property owner or asking permission to park his car in the driveway. Kane claimed he left a "for sale" sign in the window of the Jeep and returned on May 10, 2016, to discover the car was missing. Kane also stated that he had the one and only set of keys to the Jeep, and no spare copies of the keys were ever created. Reagin did not observe any broken glass or drag marks on the gravel driveway that would indicate a car had been broken into or towed from the loss

---

*Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

location.  Reagin also contacted police dispatch, and dispatch stated no car had been towed from the loss location during the time Kane says it was parked there.  Further, Reagin testified County Road 87 is within his patrol area and he traveled past the loss location several times between May 4 and May 10, but he never saw a Jeep parked there.

Detective Rauch ("Rauch") was assigned to investigate the reported theft.  According to his affidavit, Rauch began his investigation by contacting the property owner at 1616 County Road 87.  The owner reported that she had not seen a Jeep parked on her property and did not have any cars towed.  Rauch confirmed that the Jeep had not been towed from the property by reviewing the dispatch logs from APD.  Additionally, Rauch confirmed Reagin's observation that there were no drag marks or broken glass at the loss location.  Next, Rauch contacted Wiregrass Construction Company, the business across the street from the loss location.  Rauch spoke to several Wiregrass employees who said they had not seen a Jeep parked at the loss location or anywhere on County Road 87.[2]  At the time of the alleged theft, Wiregrass had a surveillance camera which captured a clear view of the loss location.  After reviewing thirty days' worth of video footage, including May 4 through May 10,

---

[2] Several of the Wiregrass employees are Jeep Wrangler enthusiasts and stated they would have taken notice of Kane's lifted and specialized Jeep had it been parked along County Road 87. (Doc. 18-15.)

2016, Rauch determined that the Jeep was never parked at the loss location. To round out his investigation, Rauch spoke to other businesses and residences located along County Road 87, and no one reported seeing a Jeep parked anywhere on the road. Based on the oddity of choosing this area to park a vehicle for sale, the lack of evidence supporting a theft and the fact that there was no evidence the Jeep was parked anywhere on County Road 87 during the relevant timeframe, Rauch concluded that no theft actually occurred.

After completing his investigation, Rauch informed EMCC of his findings. EMCC then conducted its own investigation into Kane's claim. EMCC first reviewed the fact that Kane had the only key to the vehicle, as well as Jeep's Sentry Key® anti-theft security system. The Sentry Key® system prevents unauthorized operation by disabling the Jeep's engine. If a key without an electronic chip specially programmed to the Jeep is used to try and start it, the engine shuts off in two seconds. Next, EMCC obtained Kane's cell phone records from Verizon and employed Cellular Solutions to investigate Kane's whereabouts from May 4 to May 10, 2016. Cellular Solutions found that Kane had no cellular activity—i.e., that he did not place or receive a phone call—in the loss location from May 4 until May 9, 2016. On May 10, 2016, cellular activity was noted in the loss location. Cell phone records reflect that on May 10, 2016, Kane called Tommy Gloor and spoke with him for

approximately five minutes before contacting APD, contrary to Kane's deposition testimony that his first call after he found his Jeep missing was to the police. Finally, EMCC interviewed Kane via telephone about Rauch's findings. After being confronted with the findings, Kane stated he "forgot" where exactly he had left the Jeep, explaining he may have parked it elsewhere on County Road 87.

After reviewing the evidence collected by the APD and conducting its own internal investigation, EMCC sent Kane a denial letter stating that it was denying his claim for four reasons: (1) insufficient evidence that a covered loss occurred; (2) fraudulent statements by Kane in connection with the loss; (3) misrepresentation in the proof of loss; and (4) Kane's failure to comply with policy conditions by not providing accurate information regarding the alleged theft.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[3] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine

---

[3] A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence but instead determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the

nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III. DISCUSSION

Kane alleges that EMCC's refusal to pay his claim amounts to bad faith. EMCC asserts that summary judgment should be granted in its favor because Kane produced no evidence to demonstrate a genuine dispute of material fact concerning whether EMCC properly investigated the claim and had a legitimate reason for not paying the claim. In a bad faith action under Alabama law, there are two methods of proving that "an actionable tort arises from an insurer's intentional refusal to settle a direct claim." *Chavers v. Nat'l Sec. Fire & Cas.*, 405 So. 2d 1, 7 (Ala. 1981). The plaintiff can show either (1) there was "no lawful basis for the refusal coupled with actual knowledge of that fact" or (2) there was an "intentional failure [on the part of the insurance company] to determine whether or not there was any lawful basis for [their] refusal." *Id.* The plaintiff has the burden of proving:

(1) An insurance contract between the parties and a breach thereof by the defendant;
(2) An intentional refusal to pay the insured's claim;
(3) The absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
(4) The insurer's actual knowledge of the absence of any legitimate or arguable reason;
(5) If the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982).

The first four elements reflect the necessary elements of what is known as a "normal" bad faith claim, and the fifth element reflects an "abnormal" case. *Emps.' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 976 (Ala. 1998). Because Kane did not specify which method he wished to use in pursuit of his claim, both will be examined.

### A. "Normal" Bad Faith

In a "normal" bad faith case, Kane must prove the first four elements mentioned above in Part III. To counter Kane's allegation of bad faith, EMCC must show only that Kane cannot meet one of the four elements. EMCC asserts that Kane cannot rebut its evidence that it had a legitimate or arguable reason for refusing his claim. To demonstrate that it had a legitimate reason for refusing Kane's claim, EMCC does not have to show that its reason for the denial was correct, but only that it was arguable or debatable. *See Liberty Nat'l Life Ins. Co. v. Allen*, 699 So. 2d 138,

143 (Ala. 1997). A "'debatable reason' . . . [is] one that is open to dispute and question." *Bowen*, 417 So. 2d at 183. Moreover, the Court determines whether the reason is arguable or debatable based on the evidence EMCC had at the time of the coverage denial. *Id.* If any one of EMCC's stated reasons for denying the claim was arguable or debatable, Kane's claim fails. *See id.* (explaining that plaintiff must show the absence of "*any* reasonably legitimate or arguable reason") (emphasis added)).

EMCC's has produced extensive, unrebutted evidence supporting its legitimate reason for denying Kane's claim: that no covered loss actually occurred. EMCC proffered the following five pieces of evidence from APD's investigation, upon which it relied in determining that no theft occurred. First, the property owner on whose driveway the Jeep was parked never saw the Jeep and did not have any vehicles towed from her property during the time Kane claimed he left the Jeep there. Second, no employees from Wiregrass saw a Jeep parked at the loss location during the relevant timeframe. Third, Officer Reagin, who patrols County Road 87 on a regular basis, never saw a Jeep parked at or near the loss location during the relevant timeframe. Fourth, there were no drag marks or broken glass at the loss location indicating that a car had been towed or broken into and driven away. Fifth, surveillance cameras from Wiregrass, which capture a clear picture of the loss

location, never recorded the Jeep parked at the loss location during the relevant timeframe.

EMCC also points to evidence gathered during its own investigation to show that it had a legitimate basis to deny the claim, specifically Kane's cell phone records; inconsistencies in Kane's statements and cell phone records; Kane's claim that he had the only key to the Jeep; and the Jeep's anti-theft security system. Kane has failed to rebut EMCC's evidence or submit any evidence demonstrating that EMCC lacked an arguable or debatable reason for denying Kane's claim.

This Court concludes that EMCC had a legitimate reason for denying Kane's claim based on the evidence before it at the time of the coverage denial. Therefore, Kane's "normal" bad faith claim fails as a matter of law.

## B. "Abnormal" Bad Faith

Next, the Court will determine whether Kane can succeed on an "abnormal" bad faith claim. "An insurer is liable for 'abnormal' bad faith when it intentionally or recklessly fails to conduct an adequate investigation of the facts and submit those facts to a thorough review." *Mut. Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1315 (11th Cir. 2004) (discussing Alabama law). "An insurer also has the responsibility to 'marshal all of the pertinent facts with regard to its insured's claim' before denying coverage." *Id.* (quoting *Nat'l Ins. Ass'n v. Sockwell*, 829 So. 2d 111,

130 (Ala. 2002)). The plaintiff can succeed in "abnormal" case by showing that the insurer:

> (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim.

*State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 306–07 (Ala. 1999).

Although Kane does not specifically allege any of the above-mentioned types of bad faith, it can be assumed that Kane contends EMCC committed any one of the first three types from the allegations in his complaint.[4] Regardless of the type Kane would have pursued, he has not produced any evidence demonstrating that EMCC intentionally or recklessly failed to investigate his claim. EMCC has cited ample evidence of the actions it undertook to investigate Kane's claim. Among other things, EMCC spoke to Detective Rauch; obtained Kane's cell phone records and had them analyzed by a third-party; examined the anti-theft system in Kane's Jeep; and interviewed Kane. Kane has failed to rebut EMCC's evidence or submit any evidence demonstrating that EMCC intentionally or recklessly failed to investigate the claim. Based on EMCC's evidence of its thorough in-house investigation, the

---

[4] This assumption is based on Kane's complaint which states: "EMC company has been under a duty to use good faith in handling, investigating and responding to the claim of Jason Patrick Kane. There is no legitimate arguable reason for the denial of said claim filed by Jason Patrick Kane." (Doc. 1-1.)

thorough investigation by the APD upon which EMCC also relied, and the lack of contradictory evidence provided by Kane, Kane cannot demonstrate that EMCC intentionally or recklessly failed to investigate his claim. Accordingly, his "abnormal" bad faith claim also fails as a matter of law.

## IV. CONCLUSION

For the reasons stated above, EMCC's motion for summary judgment (doc. 16) is due to be GRANTED, and Kane's claims are due to be DISMISSED WITH PREJUDICE. An Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on April 7, 2020.

_____
L. Scott Coogler
United States District Judge

199335